# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DOGS DESERVE BETTER, INC., a
Pennsylvania Corporation,

       Plaintiff,

vs.                                                                        No. CIV 13-0592 JB/GBW

NEW MEXICO DOGS DESERVE BETTER, INC.;
MARTINA C. HOLGUIN, KAYE L. PEERY,
and ANGELA STELL,
in their individual and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Default

Judgment and Permanent Injunction, filed February 20, 2014 (Doc. 17)("Motion for Default

Judgment"); (ii) the Defendants' Motion to Set Aside Clerk's Entry of Default, filed February 25,

2014 (Doc. 18)("Motion to Set Aside"); and (iii) the Plaintiff's Motion for Leave to File Sur-Reply

to Individual Defendants' Motion to Set Aside Clerk's Entry of Default, filed April 8, 2014 (Doc.

25)("Motion for Leave").  The Court held a hearing on August 28, 2014.  The primary issue is

---

[1]On September 11, 2014, the Court issued (i) an Order, filed September 11, 2014 (Doc. 29)("Order 1"), in which it denied the Plaintiff's Motion for Default Judgment and Permanent Injunction, filed February 20, 2014 (Doc. 17), and (ii) an Order, filed September 11, 2014 (Doc. 30)("Order 2"), in which it granted the Defendants' Motion to Set Aside Clerk's Entry of Default, filed February 25, 2014 (Doc. 18), stating in both Orders: "The Court will, however, at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision."   Order 1 at 1 n.1; Order 2 at 1 n.1.   As well, on March 7, 2015, the Court issued an Order, filed March 7, 2015 (Doc. 34)("Order 3"), in which it granted the Plaintiff's Motion for Leave to File Sur-Reply to Individual Defendants' Motion to Set Aside Clerk's Entry of Default, filed April 8, 2014 (Doc. 25), stating: "The Court may, however, at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision."   Order 3 at 1 n.1.  This Memorandum Opinion is the promised opinion.

whether good cause exists under rule 55(c) of the Federal Rules of Civil Procedure to set aside the Clerk's Entry of Default, filed October 22, 2013 (Doc. 14)("Clerk's Entry of Default").   Pursuant to its analysis under rule 55(c), the Court concludes that: (i) setting aside the Clerk's Entry of Default in favor of continuing the litigation will not prejudice the Plaintiff Dogs Deserve Better; (ii) the conduct of the Defendants New Mexico Dogs Deserve Better ("New Mexico Dogs"), Angela Stell, Martina C. Helguin, and Kaye L. Peery, resulting in the Clerk's Entry of Default, was not willful and culpable, but instead the consequence of confusion amongst all parties; and (iii) the individual Defendants likely have a meritorious defense to the claims alleged in the Complaint, filed June 26, 2013 (Doc. 6), by virtue of the Volunteer Protection Act, 42 U.S.C. § 14501.   In light of those conclusions, the Court thereby concludes that good cause exists, and thus (i) denies Dogs Deserve Better's ("Dogs Deserve") Motion for Default, and (ii) grants the Defendants' Motion to Set Aside.   The Court will also grant Dogs Deserve's Motion for Leave to File Sur-Reply.

## FACTUAL BACKGROUND

The Court takes its recitation of the facts from the Complaint, the Motion for Default Judgment, the Motion to Set Aside, and the Plaintiff's Response to Individual Defendants' Motion to Set Aside Clerk's Entry of Default, filed March 11, 2014 (Doc. 22)("Response to Motion to Set Aside").   Dogs Deserve is a nonprofit charitable corporation that is incorporated in Pennsylvania and, beginning in July, 2011, maintains its operations in Virginia.   See Complaint ¶ 1, at 1-2. Dogs Deserve provides rescue services for dogs suffering from mistreatment.   See Complaint ¶ 1, at 2.   Dogs Deserve makes various allegations against the Defendants, with Count One being an action for false designation of origin and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a).   See Complaint ¶ 8, at 3.   In support of the allegation, Dogs Deserve provides

that part of its national business model is seeking out local representatives in states -- New Mexico included -- who will further Dogs Deserve's purpose of rescuing dogs.  See Complaint ¶¶ 12-13, at 4.  "Persons desiring to be a local representative of Plaintiff DDB agree to provide rescue services in their home state and to operate according to Plaintiff DDB's rules and strictures with regard to the type of rescue services provided, donation collections, and otherwise representing Plaintiff DDB as a representative of its organization."  Complaint ¶ 14, at 4.  In return for becoming a local representative, one is "provided with disbursements from Plaintiff DDB's funds for use in rescues, collected by DDB through its website . . . or by direct donation to DDB at its main offices under the laws of its state(s) of incorporation and operation."  Complaint ¶ 15, at 4. In furtherance of its enterprise, Dogs Deserve executed, on November 20, 2012, the registration of the "DOGS DESERVE BETTER" mark on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Reg. No. 4,244,734.  See Complaint ¶ 59, at 14.  Dogs Deserve Better thus owns and uses the "DOGS DESERVE BETTER" mark "in various forms and styles, extending to and including NEW MEXICO DOGS DESERVE BETTER, in connection with its charity services for rescue of chained animals, which from its beginning use until November 20, 2012 had not been previously registered in the United States Patent and Trademark Office."  Complaint ¶ 55, at 13.

The Complaint alleges that Stell became such a local representative in New Mexico in February, 2010, and used the website address for her local chapter, New Mexico Dogs, to collect donations that she channeled directly into the bank accounts of New Mexico Dogs.  See Complaint ¶¶ 17-20, at 5.  Because Dogs Deserve requires first that donations be centralized within the national chapter, Dogs Deserve, and only thereafter be disbursed into the authorized accounts of local representatives, like New Mexico Dogs, Dogs Deserve notified Stell of the

violation and requested compliance with the rules.   See Complaint ¶¶ 22-23, at 6.   Dogs Deserve alleges that Stell did not comply and continued to violate the rules until her resignation as a local Dogs Deserve representative on August 15, 2011.   See Complaint ¶ 28, at 7.   Also, before Stell's resignation, she, along with Holguin and Peery, had already, on June 16, 2011, incorporated "New Mexico Dogs Deserve Better, Inc."   See Complaint ¶ 29, at 7.   Accordingly, Dogs Deserve essentially alleges that:

> Defendants' use of the Plaintiff's DOGS DESERVE BETTER mark or NEW MEXICO DOGS DESERVE BETTER mark constitutes a false designation of origin which is likely to deceive and has deceived donors in New Mexico and elsewhere throughout the United States into believing that Defendants' charity services are that of the Plaintiff, and as a consequence, is likely to divert and has diverted donors away from Plaintiff.

Complaint ¶ 51, at 11-12.   The Motion for Default Judgment provides that the Defendants eventually changed the name of their corporate entity -- New Mexico Dogs -- over two months after Dogs Deserve filed the Complaint and sent a cease and desist letter; yet, still, according to Dogs Deserve, the Defendants have -- for the approximately eight months subsequent to the Complaint's filing -- continued to willfully infringe upon its mark.   See Motion for Default Judgment ¶ 27, at 7.

After Dogs Deserve filed its Complaint, counsel for both parties engaged in settlement negotiations.   See Motion to Set Aside at 1.   In their first communications, occurring when Defendants' counsel -- Rudolph Chavez -- requested that Dogs Deserve reissue waivers of service, Dogs Deserve alleges that Mr. Chavez "stated in no uncertain terms . . . that he was representing the Defendants pro bono, that he had told them it was only for the purposes of negotiation, and that he had made clear to them that he could not undertake litigation on their behalf for free."   Response to Motion to Set Aside at 3 (emphases omitted).   Dogs Deserve further alleges, with respect to Mr. Chavez, that "Towards that end of preventing his appearance in court since he had

limited his representation, Defendants' counsel discussed with Plaintiff's counsel that he wanted to 'settle this' and enter an agreed stipulation of dismissal under Rule 41 before his clients had to enter an appearance."   Response to Motion to Set Aside at 3.   To that end, the parties engaged in email settlement negotiations, but to no avail, apparently because Mr. Chavez was unable to demonstrate that the Defendants had no assets.   See Motion to Set Aside at 1; Response to Motion to Set Aside at 4-7.   Dogs Deserve also notes that, while Mr. Chavez has stated that he was under the impression that during the settlement negotiations he did not need to file an answer to the Complaint, see Motion to Set Aside at 1, the Defendants nonetheless had ample warning and notice as to the imminent end of negotiations, see Response to Motion to Set Aside at 11-12.

> Quite simply, a statement by Mr. Chavez that he didn't believe an answer was required "during negotiations" is true, but inherently misleading.   Plaintiff had indicated that if negotiations were in good faith and had a likelihood of success, she would be willing to extend the deadline to allow time to "hammer out minor details."   Plaintiff's counsel had also made it very clear that such was dependent on good faith and was for "minor details." . . .   Plaintiff's counsel had made clear to Mr. Chavez that she did not think that the negotiations were proceeding in good faith and that parties were certainly not at a point of hammering out minor details. . . .   Plaintiff's counsel had made it very clear, including three times in writing, that negotiations would end and litigation would continue, even filing for default, . . . so Mr. Chavez's purported vague statement about an understanding that clearly didn't apply to the status of negotiations at the time of default is inapposite.

Response to Motion to Set Aside at 12-13.

## PROCEDURAL BACKGROUND

Dogs Deserve thus seeks relief from allegations that the Defendants have committed trademark infringement, trademark dilution, unfair competition, and unfair business practices. See Complaint at 1.   Dogs Deserve was apparently engaged in ongoing negotiations with the Defendants during the period of time spanning from the Complaint's filing until an Answer was due.   See Motion to Set Aside at 1.   In the midst of confusion and miscommunication amongst Dogs Deserve and the Defendants during those negotiations -- that confusion and

miscommunication concerning the necessity of responding to the Complaint -- the Defendants never filed an answer. See Motion to Set Aside at 1. The dispute thus arises from the Clerk's Entry of Default, and requires the Court to approve of the Clerk's Entry of Default and enter default judgment, or else set aside the Clerk's Entry of Default to allow Defendants an opportunity to answer the Complaint.

In addition to the false designation claim alleged as Count 1, the Complaint's other allegations similarly flow from the Defendants' appropriation of Dogs Deserve's marks and likeness. See Complaint ¶¶ 53-92, at 12-19. Count 2 is for common-law trademark infringement. See Complaint ¶¶ 53-57, at 12-13. Dogs Deserve asserts a right to the mark "superior to any rights which any of the named Defendants may claim in and to said mark in any form, style and or like variation thereof with respect to charity services for rescue of animals." Complaint ¶ 46, at 13. The Complaint also sets forth a statutory trademark infringement allegation, pursuant to 15 U.S.C. § 1051, which relies on its November 20, 2012, registration of the "DOGS DESERVE BETTER" mark. See Complaint ¶ 59, at 14. The other counts -- for unfair competition under the New Mexico Unfair Competition Statute, NMSA § 59A-16-3; false and misleading advertising under NMSA § 16-21-11; common-law unfair competition; unjust enrichment; and misappropriation of property -- are also premised on the Defendants' unlawful appropriation of Dogs Deserve's marks and likeness. See Complaint ¶¶ 70-92, at 15-19. In sum, Dogs Deserve requests in part that the Court enjoin the Defendants from using the relevant marks and likeness, and return all profits that the Defendants enjoyed as a result of their appropriation of Dogs Deserve's marks. See Complaint at 19-21.

After Dogs Deserve filed the Complaint, the Defendants did not answer, despite being "duly mailed the original Notice of Suit and Waiver of Service" on June 27, 2013. Motion for

Default Judgment ¶ 10, at 4; Clerk's Entry of Default at 1.  The Defendants' Counsel -- Mr. Chavez -- then requested that Dogs Deserve reissue the Waivers of Service, which it did -- thereby expressly extending the Defendants' time to answer by forty-six days, from August 26, 2013, to October 12, 2013.  See Motion for Default Judgment ¶ 12, at 4.  See also Waiver of the Service of Summons as to New Mexico Dogs Deserve Better, filed October 2, 2013 (Doc. 8)(stating that the answer would be due "60 days from August 12, 2013"); Waiver of the Service of Summons as to Angela Stell, filed October 2, 2013 (Doc. 9)(same); Waiver of the Service of Summons as to Martina Holguin, filed October 2, 2013 (Doc. 10)(same); Waiver of the Service of Summons as to Kaye Peery, filed October 2, 2013 (Doc. 11)(same).  Settlement negotiations were ongoing, resulting in the Defendants' mailing of a final settlement offer to Dogs Deserve on September 26, 2013, with the Defendants indicating they would not budge from their final offer.  See Motion for Default Judgment ¶ 13, at 4.  Dogs Deserve refused the Defendants' offer with its own final counteroffer, in which it provided that it would continue its pursuit of litigation should the Defendants decline.  See Motion for Default Judgment ¶ 14, at 4.  That counteroffer had a response deadline of October 11, 2013 -- one day before the Defendants' deadline to answer the Complaint.  See Motion for Default Judgment ¶ 14, at 4; Clerk's Entry of Default at 1.  The Defendants declined the counteroffer because on October 15, 2013, Dogs Deserve requested an entry of default from the Clerk of Court, which the Clerk of the Court eventually entered on October 22, 2013.  See Motion for Default Judgment ¶¶ 15-17, at 5; Clerk's Entry of Default at 1.

When the Defendants learned of the Clerk's Entry of Default, they retained substitute counsel, who entered an appearance on January 13, 2014.  See Motion to Set Aside at 1; Entry of Appearance, filed January 13, 2014 (Doc. 15).  Substitute counsel thereafter reengaged Dogs Deserve in settlement negotiations and indicated that they would be filing the Motion to Set Aside.

See Motion to Set Aside at 1-2.   According to the Defendants, Dogs Deserve did not respond to their settlement negotiation requests and instead entered the Motion for Default Judgment.   See Motion to Set Aside at 2; Motion for Default Judgment ¶ 1, at 2 ("Defendants' new counsel of record, Ms. Alicia LaPado was advised in a telephone conference on January 15, 2014 and by formal written notice mailed January 23, 2013 [sic] of Plaintiff's intent to file the instant motion.").   After entering their appearance, substitute counsel for the Defendants have been actively engaged in the lawsuit.   See Motion to Set Aside at 1-2.

      1.      **Motion for Default Judgment**.

      Dogs Deserve then waited nearly three months after the Clerk's Entry of Default to make its Motion for Default Judgment, which it filed on February 20, 2014.   See Motion for Default Judgment ¶ 18, at 5.   Dogs Deserve's Motion for Default Judgment requests, pursuant to rule 55(b)(1) of the Federal Rules of Civil Procedure, that "judgment be entered in its favor on all counts stated in its Complaint and that [New Mexico Dogs] be permanently enjoined from using the marks 'NEW MEXICO DOGS DESERVE BETTER,' 'DOGS DESERVE BETTER NEW MEXICO,' 'DOGS DESERVE BETTER,' 'NM DDB' and 'NMDDB,'" with "the latter two simply being their shorthand of the 'New Mexico Dogs Deserve Better' mark, which mirrors Dogs Deserve as shorthand from its name."   Motion for Default Judgment at 1.   Dogs Deserve also requests that the Court suspend setting a damages hearing so that counsel from both Dogs Deserve and the Defendants might be able to reach a settlement of damages.   Motion for Default Judgment at 2.   Dogs Deserve asserts that, after the Clerk's Entry of Default in its favor on October 22, 2013, the Defendants have not taken the appropriate course of action to now be contesting the Motion for Default Judgment.   See Motion for Default Judgment ¶¶ 1-31, at 2-9.   To that point, the Motion for Default Judgment recites the case's factual history.   See Motion for Default

Judgment ¶¶ 1-31, at 2-9.

According to the Motion for Default Judgment, the Defendants were given ample time to answer the Complaint -- including numerous generous extensions of time -- and "cannot now, almost seven (7) months after they were served notice of suit, cannot [sic] claim surprise that default was entered."   Motion for Default Judgment ¶ 24, at 6-7.   Dogs Deserve argues that the Defendants cannot "claim hardship to file an Answer before Entry of Default.   They were given one hundred and fifteen (115) days after Notice of Suit was served."   Motion for Default Judgment ¶ 25, at 7 (emphasis in original).   "Furthermore, they went through another ninety (90) days *after* default before their new counsel entered appearance into the action, such that at the time of entry of appearance in January, two hundred and five (205) days had passed since the Defendants were served with Notice of Suit."   Motion for Default Judgment ¶ 25, at 7 (emphasis in original).

Then, taking into account the Defendants' delays over the course of this litigation, the Motion for Default Judgment maintains that Dogs Deserve has been subjected to ongoing prejudice by the continued misappropriation of its marks and loss of profits to the Defendants. See Motion for Default Judgment ¶ 26, at 7.   The Motion for Default Judgment provides that the Defendants eventually changed the name of their corporate entity -- New Mexico Dogs -- over two months after Dogs Deserve filed the Complaint and sent a cease and desist letter; yet, still, according to Dogs Deserve, the Defendants have -- for the approximately eight months subsequent to the Complaint's filing -- continued to willfully infringe upon its mark.   See Motion for Default Judgment ¶ 27, at 7.   The Motion for Default Judgment thus requests that:

> [T]he Court, in accordance with the pleadings[,] . . . enter Default Judgment regarding the infringement and the related false designation of origin, unfair competition, false advertising, unjust enrichment claims, and misappropriation of property and any other claim asserted under New Mexico statutory and common

law as well as federal statutory and common law.

Motion for Default Judgment ¶ 29, at 9.   The Motion for Default Judgment also requests a "Permanent Injunction preventing Defendant from continued use of its marks" and some time for the parties to continue negotiations regarding a damages settlement, as opposed to immediate setting of a damages hearing.   Motion for Default Judgment ¶¶ 30-31, at 9.

### 2.   <u>Motion to Set Aside Default Judgment</u>.

The Defendants filed their Motion to Set Aside on February 25, 2014, five days after Dogs Deserve filed their Motion for Default Judgment.   <u>See</u> Motion to Set Aside at 1.   The Motion to Set Aside initially emphasizes that the Defendants did not learn of the Clerk's Entry of Default until December, 2013, -- over a month after its entry.   <u>See</u> Motion to Set Aside at 1.   The Defendants provide that, once they learned of the Clerk's Entry of Default, they "promptly sought substitute counsel."   Motion to Set Aside at 1.   The Defendants' essential argument in support of the Motion to Set Aside is that rule 55(c) allows a Court to set aside an entry of default for good cause.   <u>See</u> Motion to Set Aside at 2.   Further, according to the Defendants, that good cause standard is less exacting than the standard incumbent to showing "excusable neglect" under rule 60, which relates to relief from judgments.   Motion to Set Aside at 2.   The Motion to Set Aside then presents a myriad of factors that the Court should consider in its analysis of the good cause standard in this context.   <u>See</u> Motion to Set Aside at 2.   By reference to <u>Pinson v. Equifax Credit Information Services</u>, 316 F. Appx. 744, 750 (10th Cir. 2009), the Defendants posit that some of the factors may be whether "the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."   Motion to Set Aside at 2.   The Motion to Set Aside then alleges that the Court may consider other factors, such as the judiciary's general distaste for default judgment.   <u>See</u> Motion to Set Aside at 2-3 (referring to <u>Walker v.</u>

United Parcel Serv., Inc., 240 F.3d 1268, 1272 (10th Cir. 2001)).   The Defendants maintain that:
(i) setting aside the Clerk's Entry of Default in favor of continuing the litigation will not prejudice
Dogs Deserve; (ii) the Defendants' conduct in bringing about the Clerk's Entry of Default was not
willful, but instead was the consequence of a miscommunication betwixt Dogs Deserve and the
Defendants' former counsel regarding the ongoing negotiations; and (iii) the Defendants have a
meritorious defense to the claims alleged in the Complaint by virtue of the Volunteer Protection
Act, which limits the liability of volunteers who have not willfully or recklessly engaged in
relevant conduct.   See Motion to Set Aside at 3-4.   Accordingly, the Motion to Set Aside
requests that the Court set aside the Clerk's Entry of Default for good cause.   See Motion to Set
Aside at 5.

### 3.        The Response to the Motion for Default Judgment.

The Defendants responded to the Motion for Default Judgment with the Defendants'
Response to Motion for Default Judgment and Permanent Injunction, filed March 6, 2014 (Doc.
20)("Response to Motion for Default Judgment").   The Response to the Motion for Default
Judgment incorporates the arguments that the Defendants made in their Motion to Set Aside.   See
Response to Motion for Default Judgment at 1.   Accordingly, the Response to Motion for Default
Judgment requests that the Court deny Dogs Deserve's Motion for Default Judgment and
permanent injunction -- and grant their Motion to Set Aside -- so that the parties can continue their
ongoing settlement negotiations.   See Response to Motion for Default Judgment at 1-2.

The Response to Motion for Default Judgment thus first maintains that courts have a
"preference for the resolution of legal claims on the merits."   Response to Motion for Default
Judgment at 2 (citing Walker v. United Parcel Serv., Inc., 240 F.3d at 1272)).   The Response to
Motion for Default Judgment provides that, "[i]n this case, the adversary process has not been

halted by the Defendants and Plaintiff will not face interminable delay because of their actions. . . . Defendants are not unresponsive parties.   They have manifested their intent to defend this case . . . ."   Response to Motion for Default Judgment at 2-3.   Accordingly, the Response to Motion for Default Judgment requests that the Court not impose the "harsh sanction" of default judgment. Response to Motion for Default Judgment at 3.

Further, in accordance with the factors for showing good cause under Pinson v. Equifax Credit Information Services, 316 F. Appx. at 750, as the Motion to Set Aside outlines, the Response to Motion for Default Judgment maintains that: (i) Dogs Deserve Better will not suffer prejudice by the Court requiring it to proceed with litigation; (ii) the Defendants did not willfully cause the Clerk's Entry of Default; and (iii) the Defendants have a meritorious defense to the Complaint's allegations pursuant to the Volunteer Protection Act.   See Response to Motion for Default Judgment at 3-5.   The Response to Motion for Default Judgment also posits that, if the Court should grant the Defendants' Motion to Set Aside, its resolution of the Motion for Default Judgment would be moot.   See Response to Motion for Default Judgment at 5.

The Response to Motion for Default Judgment also provides that, while the Clerk's Entry of Default requires that the Defendant be deemed to have admitted all well-pleaded allegations in the Complaint, a party in default does not admit mere conclusions of law.   See Response to Motion for Default Judgment at 5.   Accordingly, the Response to Motion for Default Judgment argues that, in the Motion for Default Judgment, Dogs Deserve has supplemented the Complaint's allegations by alleging that "Holguin and Peery were also incorporating officers of the entity and involved in the rescue community," an allegation that does not appear in the Complaint, and by attaching exhibits which are not attached to the Complaint.   See Response to Motion for Default Judgment at 6.   The Defendants thus request that the Court rely only on the allegations in the

Complaint.   See Response to Motion for Default Judgment at 6.

   **4.      The Response to the Motion to Set Aside.**

   Dogs Deserve responded to the Defendants' Motion to Set Aside with its Response to Motion to Set Aside.   Dogs Deserve begins by providing that, while they would normally hesitate to endeavor into a long detailing of settlement negotiations, such detail is necessary in the present case.   See Response to Motion to Set Aside at 1-2.   Accordingly, the Response to Motion to Set Aside delves into the factual background of this case, once more, to demonstrate that the Defendants were aware of their duty to answer the Complaint, irrespective of any possible miscommunication betwixt their first attorney and Dogs Deserve.   See Response to Motion to Set Aside at 1-2.   Dogs Deserve provides that, after they filed the Complaint, they contacted the Defendants' attorney, Mr. Chavez, with waivers of service, and eventually reissued those waivers of service -- resulting in a forty-six day extension on the deadline to answer.   See Response to Motion to Set Aside at 2.   The Response to Motion to Set Aside contends that before Dogs Deserve reissued the waivers, Mr. Chavez "stated in no uncertain terms . . . that he was representing the Defendants *pro bono*, that he had told them it was only for the purposes of negotiation, and that he had made clear to them that he could not undertake litigation on their behalf for free."   Response to Motion to Set Aside at 3 (emphases in original).   "Towards that end of *preventing his appearance* in court since he had limited his representation, Defendants' counsel discussed with Plaintiff's counsel that he wanted to 'settle this' and enter an agreed stipulation of dismissal under Rule 41 before his clients had to enter an appearance."   Response to Motion to Set Aside at 3 (emphasis in original).   There were then a series of email settlement offers that Dogs Deserve's counsel and Mr. Chavez exchanged, but to no avail.   See Response to Motion to Set Aside at 4-6.   The primary sticking point, the Response to Motion to Set Aside

contends, was Mr. Chavez' inability to demonstrate his clients' lack of assets.   See Response to Motion to Set Aside at 5-7.   Dogs Deserve thus moved for the Clerk's Entry of Default.   See Response to Motion to Set Aside at 6.   Eventually, as the Response to Motion to Set Aside provides, Defendants hired new counsel who reengaged Dogs Deserve in Settlement and litigation negotiations.   See Response to Motion to Set Aside at 7-8.   The Response to Motion to Set Aside thus contends that, in light of the communications amongst Dogs Deserve, Mr. Chavez, and the Defendants, "good cause" to set aside the Clerk's Entry of Default does not exist pursuant to rule 55(c).   Response to Motion to Set Aside at 8.

The Response to Motion to Set Aside first argues that there is no precedent to support the Motion to Set Aside's contention that the standard for showing "good cause" is a lesser standard than that for showing "excusable neglect."   Response to Motion to Set Aside at 8.   The Response to Motion to Set Aside then argues that the more proper recitation of the factors a Court should analyze when determining good cause comes from Hunt v. Ford Motor Co., 1995 WL 523646, at *3 (10th Cir. 1995), which provides:

> The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense.   These factors are not "talismanic" and the court may consider other factors.   However, the court need not consider all the factors.   If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone.

Hunt v. Ford Motor Co., 1995 WL 523646, at *3 (citations omitted).   See Response to Motion to Set Aside at 9.   The Response to Motion to Set Aside contends that: (i) the Defendants' default was culpable; (ii) setting aside the Clerk's Entry of Default would prejudice Dogs Deserve; and (iii) the Defendants have not provided a meritorious defense.   See Response to Motion to Set Aside at 8-20.

The Defendants' default was therefore willful and culpable, the Response to Motion to Set Aside argues, because they had, at the least, constructive notice that the negotiations were futile and would be ending -- meaning that Dogs Deserve would be pursuing litigation -- and because Dogs Deserve sent the Defendants and Mr. Chavez a letter explaining that "we will proceed with litigation, including filing for default if your clients do not enter *pro se* to file an answer or make the necessary arrangements for you or other counsel to enter on their behalf."   Response to Motion to Set Aside at 11 (emphasis in original).   Dogs Deserve notes that, while Mr. Chavez has stated that he was under the impression that during the settlement negotiations he did not need to file an answer to the Complaint, such is immaterial to the good cause inquiry, because the Defendants nonetheless had ample warning and notice as to the imminent end of negotiations. See Response to Motion to Set Aside at 11-12.

> Quite simply, a statement by Mr. Chavez that he didn't believe an answer was required "during negotiations" is true, but inherently misleading.  Plaintiff had indicated that if negotiations were in good faith and had a likelihood of success, she would be willing to extend the deadline to allow time to "hammer out minor details."  Plaintiff's counsel had also made it very clear that such was dependent on good faith and was for "minor details." . . .  Plaintiff's counsel had made clear to Mr. Chavez that she did not think that the negotiations were proceeding in good faith and that parties were certainly not at a point of hammering out minor details. . . .  Plaintiff's counsel had made it very clear, including three times in writing, that negotiations would end and litigation would continue, even filing for default, . . . so Mr. Chavez's purported vague statement about an understanding that clearly didn't apply to the status of negotiations at the time of default is inapposite.

Response to Motion to Set Aside at 12-13.   Accordingly, the Response to Motion to Set Aside contends that Mr. Chavez' actions evidence the Defendants' willful and culpable behavior, considering that he was retained only to be engaged in settlement negotiations and not litigation. See Response to Motion to Set Aside at 13.   Dogs Deserve maintains: "[T]he lack of an entry or answer in combination with Mr. Chavez's statements about the extent of his representation show . . . Defendants failed to reasonably retain counsel to represent them in this matter after

negotiation's failure."   Response to Motion to Set Aside at 13-14.

The Response to Motion to Set Aside next argues that setting aside the Clerk's Entry of Default would prejudice Dogs Deserve, because the "Plaintiff has a reasonable expectation that Defendants, along with all litigants everywhere, be required to follow the rules and reply in a reasonable time in the pursuit of relief from Defendants' activities as set out in the Complaint." Response to Motion to Set Aside at 15.   Further, the Response to Motion to Set Aside argues, the prejudice is manifest in the Defendants' continued use of its marks and the expense of litigation. See Response to Motion to Set Aside at 15.

Regarding the lack of a meritorious defense, the Response to Motion to Set Aside argues that the Defendants' contention in their Motion to Set Aside -- that they would be protected from liability by the Volunteer Protection Act -- must fail, because they "were not volunteer(s) . . . at the time of the act."   Response to Motion to Set Aside at 17.   The argument essentially is that in the "act of incorporation" Defendants could not be volunteers because no nonprofit corporation yet existed.   Response to Motion to Set Aside at 18.   Even regarding the Complaint's allegations that deal with acts beyond the nonprofit's formation, the Response to Motion to Set Aside argues that the Volunteer Protection Act also does not apply, because the Defendants' conduct as alleged was willful, which the Volunteer Protection Act's protections do not cover.   See Response to Motion to Set Aside at 19-20.   Thus, Dogs Deserve requests that the Court deny the Defendants' Motion to Set Aside.   See Response to Motion to Set Aside at 20-21.

**5.       Dogs Deserve's Reply in Support of its Motion for Default Judgment.**

Dogs Deserve replied to the Defendants' Response to Motion for Default Judgment with Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Default Judgment and Permanent Injunction, filed March 25, 2014 (Doc. 23)("Reply Supporting Motion for Default

Judgment"), and adopted all of its previous arguments from the various pleadings.  The Reply Supporting Motion for Default Judgment essentially argues that the Defendants had knowledge "of their duty to file an answer to avoid default."   Reply Supporting Motion for Default Judgment at 1.  Dogs Deserve asserts that the Defendants had this knowledge, because they had (i) knowledge "sixty (60) days from the mailing of the waivers of service on June 27, 2013;" (ii) knowledge after the reissuance of the waivers on August 12, 2013, which extended the deadline to answer forty-six days; (iii) knowledge of the likelihood that negotiations would end given the Defendants' take-it-or-leave-it offer to settle; (iv) knowledge of the end of negotiations; and (v) confirmation that negotiations would end and entry of default was possible.  See Reply Supporting Motion for Default Judgment at 1-2.  The Reply Supporting Motion for Default Judgment maintains that this knowledge translates to the Defendants' culpable and willful default given their violation of their duty to defend.  See Reply Supporting Motion for Default Judgment at 2.  Plus, according to Dogs Deserve, the Defendants retained Mr. Chavez to represent them only in pursuit of a settlement.  See Reply Supporting Motion for Default Judgment at 2.  According to the Reply Supporting Motion for Default Judgment, the Defendants are merely arguing that their counsel's supposed neglect, in not telling the Defendants that an answer to the Complaint was going to be due if the case did not settle, means that they did not willfully cause the Clerk's Entry of Default.  See Reply Supporting Motion for Default Judgment at 3.

Further, the Reply Supporting Motion for Default Judgment argues that Mr. Chavez' hearsay assertion that he did not think an answer needed to be filed while settlement negotiations were ongoing is a red herring, because the nature of his representation indicates that the Defendants had not appropriately arranged for counsel in this matter.  See Reply Supporting Motion for Default Judgment at 5.   Essentially, because the Defendants retained Mr. Chavez only

to settle, the Defendants erred by not entering an appearance pro se or otherwise arranging for trial counsel.   See Reply Supporting Motion for Default Judgment at 5.   The Reply Supporting Motion for Default Judgment then reincorporates Dogs Deserve's arguments in previous pleadings that the Volunteer Protection Act does not provide a meritorious defense to these Defendants. See Reply Supporting Motion for Default Judgment at 7-9.

Last, Dogs Deserve -- for the first time -- alleges in the Reply Supporting Motion for Default Judgment that the Defendants' Motion to Set Aside was only entered as to Stell, Holguien, and Peery, whereas the Defendants' Response to Motion for Default Judgment also encompassed the corporate entity, New Mexico Dogs.   See Reply Supporting Motion for Default Judgment at 9. This difference, the Reply Supporting Motion for Default Judgment contends, means that, even if the Court grants the Motion to Set Aside, the Clerk's Entry of Default should stand as to the corporate entity that the Complaint named, New Mexico Dogs.   See Reply Supporting Motion for Default Judgment at 9-10.

> ## 6.       **The Defendants' Reply in Support of the Motion to Set Aside.**

The Defendants replied to Dogs Deserve's Response to Motion to Set Aside with their Reply in Support of Defendants' Motion to Set Aside Clerk's Entry of Default, filed March 25, 2014 (Doc. 24)("Reply Supporting Motion to Set Aside").   The Reply Supporting Motion to Set Aside reincorporates the arguments that the Defendants made in the Motion to Set Aside, and begins by providing the contents of the Declaration of Angela Stell, filed March 25, 2014 (Doc. 24-1).   See Reply Supporting Motion to Set Aside at 1-3.   According to the Reply Supporting Motion to Set Aside, Stell had been in contact with Mr. Chavez and was under the impression that he was handling both the negotiations and litigation.   See Stell Decl. ¶¶ 10-11, 14, at 2-3.   As evidence, Stell relies on a retainer agreement which was supported by a $2,500.00 retainer and

contained no limitation on the scope of the representation.   See Stell Decl. ¶¶ 10-11, 14, at 2-3. The Defendants offer that mistake in the representation's scope as being why the Defendants, in part, did not learn of the Clerk's Entry of Default for two months after it was filed.   See Reply Supporting Motion to Set Aside at 2.   Thus, the Reply Supporting Motion to Set Aside maintains that there was no willful cause by the Defendants related to the Clerk's Entry of Default because they relied on their counsel.   See Reply Supporting Motion to Set Aside at 4-5.   Further, the Reply Supporting Motion to Set Aside again argues that Dogs Deserve will suffer no prejudice by continuation of the litigation and that, at the least, facts exist that warrant a jury's consideration of whether the Volunteer Protection Act will operate as a defense to the Complaint's allegations. See Reply Supporting Motion to Set Aside at 3-9.   The Reply Supporting Motion to Set Aside thus requests that the Court grant the Defendants' Motion to Set Aside.   See Reply Supporting Motion to Set Aside at 9.

### 7.        Dogs Deserve's Motion for Leave to File Sur-Reply.

On April 8, 2014, Dogs Deserve filed its Motion for Leave, arguing that, in the Defendants' Reply Supporting Motion to Set Aside, the Defendants asserted new facts and raised new issues of law.   See Motion for Leave at 1.   Dogs Deserve states: "Specifically, Defendant introduces in its reply a new defense of reliance on advice of counsel, and introduces an entire affidavit of new factual allegations."   Motion for Leave at 1.   The Motion for Leave then asserts that: (i) the Defendants were culpable for their default, because they failed to monitor their case and they have not alleged that Mr. Chavez otherwise withheld information about their case; and (ii) the Defendants' reliance on the defense of the Volunteer Protection Act must fail, as well as their newly alleged invocation of the defense of "reliance on counsel."   Motion for Leave at 6.   Dogs Deserve states that they covered the first assertion in their briefs, but that the second assertion that

the Reply Supporting Motion to Set Aside asserts, the existence of a meritorious defense against the Complaint of reliance on counsel, raises new issues.  See Motion for Leave at 6-11.  The Motion for Leave argues that the Defendants cannot assert reasonable reliance on counsel, because the advice on which they relied was incompetent.  See Motion for Leave at 7.  The Motion for Leave frames the argument that Defendants made in the Reply Supporting Motion to Set Aside as apparently being that the Defendants, upon erroneous advice of counsel, continued infringement upon Dogs Deserve's marks, even after they were told to stop.  See Motion for Leave at 7. Because relying on that advice makes no sense, the Motion for Leave argues, the Defendants do not make out a meritorious defense to the Complaint's allegations.  See Motion for Leave at 7-10.

**8.      The Defendants' Response to the Motion for Leave.**

The Defendants responded to the Motion for Leave with the Defendants' Response in Opposition to Plaintiff's Motion for Leave to File Sur-Reply and Motion to Strike, filed April 22, 2014 (Doc. 26)("Response to Motion for Leave").   The Response to the Motion for Leave argues that the Defendants do not raise any new facts or issues of law entitling Dogs Deserve to leave to file sur-reply.  See Response to Motion for Leave at 1.  The Response to the Motion for Leave also alleges that Dogs Deserve failed to good-faith confer with the Defendants before filing its motion, authorizing the Court to deny the Motion for Leave.  See Response to Motion for Leave at 2.  Next, the Response to Motion for Leave argues that the Reply Supporting Motion to Set Aside raises no new issues, particularly not a "radical" new issue; the Defendants contend that "radical" is the standard for granting a motion for leave to file sur-reply.  Response to Motion for Leave at 2-3.  The Response to the Motion for Leave also takes issue with the detailed reiteration of the arguments that Dogs Deserve had already made in its previous briefs, as the purpose of a motion for leave to file sur-reply should be focused on what issues still need to be addressed.  See

Response to Motion for Leave at 2-5.

        **9.**       **Dogs Deserve's Reply in Support of its Motion for Leave.**

      Dogs Deserve replied in support of its Motion for Leave with Plaintiff's Reply to Defendants' Response and Motion to Strike Plaintiff's Motion for Leave to File Sur-Reply, filed May 6, 2014 (Doc. 27)("Reply in Support of Motion for Leave").  The Reply in Support of Motion for Leave argues that, without leave to file sur-reply, Dogs Deserve will "have no opportunity to respond to new information in Defendants' reply: the new issues of law (the affirmative defense and the defense to willfulness in the default) or the extensive matters of fact (the affidavit/exhibits)."  Reply in Support of Motion for Leave at 6.  The Reply in Support of Motion for Leave thus reiterates that the Defendants allege new factual allegations and a substantive defense in the Defendants' Reply Supporting Motion to Set Aside, those being: (i) the contract between Mr. Chavez and the Defendants, and Stell's Declaration; and (ii) the affirmative defense of reliance on counsel.  See Reply in Support of Motion for Leave at 2-3.  With respect to failing to confer, Dogs Deserve argues that it was unsure if it would file the Motion for Leave and that, when it did decide to file the Motion for Leave, it was already on the day of the deadline, and opposing counsel did not respond to her email on that day asking if the Motion for Leave would be unopposed.  See Reply in Support of Motion for Leave at 3-5.

        **10.**  **The August 28, 2014, Hearing.**

      The Court held a hearing on August 28, 2014.  See Transcript of Hearing (taken August 28, 2014)("Tr.")(Court, Fain, LaPado).  The Court began the hearing by addressing Dogs Deserve's Motion for Leave, indicating that it was inclined to grant the Motion for Leave, see Tr. at 4:14-5:8 (Court), to which Dogs Deserve indicated that it "could probably stand on the motion," Tr. at 5:12 (Fain).  Dogs Deserve explained that counsel had spoken with Mr. Chavez and

confirmed that he had provided notice to the Defendants "of the motion for default, as well as the possibility of default in relation to receiving the plaintiff's final offer for settlement, because it immediately preceded the default deadline." Tr. at 6:19-7:1 (Fain). Further, regarding the Defendants' new affirmative defense, Dogs Deserve argues that the Defendants "basically claimed malpractice on the part of Mr. Chavez," so Dogs Deserve provided, and clarified, that Defendants had never apprised Mr. Chavez of "the prior use of New Mexico Dogs Deserve Better in New Mexico by the plaintiffs." Tr. at 7:5-12 (Fain). The Defendants responded that they object to Dogs Deserve's use of "hearsay interpretation of statements that [Mr. Chavez] may or may not have made to [Ms. Fain]." Tr. 8:1-3 (LaPado). The Defendants argued that because Mr. Chavez has made conflicting statements to the Defendants' counsel, the Court should not place reliance on the statements that Dogs Deserve now proffers, and instead should require an affidavit. See Tr. at 8:4-14 (LaPado). The Court then granted the Motion for Leave. See Tr. at 9:5-7 (Court).

The Court then took up the Motion for Default Judgment and the Motion to Set Aside. See Tr. at 10:1-2 (Court). Dogs Deserve argued that "the plaintiffs gave an extension so that the defendants had essentially 115 days in order to file an answer. Their chosen counsel was made aware repeatedly that the default deadline was October 12, and that those negotiations failed and litigation would continue." Tr. at 10:10-15 (Fain). Dogs Deserve provided:

> As I've stated, both in logically following the defendant's former counsel's actions in this case, as well as the vagueness of the claims made by the defendants themselves . . . Defendants were made aware repeatedly from notice to their counsel of the default deadline as well as the entry of default and motion for default itself, and did not enter [an answer].

Tr. at 11:2-15 (Fain). Dogs Deserve then stated: "As such, the defendants have not monitored the case; they have not defended, and now wish to come back and set aside the default." Tr. at 12:5-7 (Fain). Dogs Deserve then, after making the argument that the Defendants had acted willfully

and culpably, began to argue that the Defendants failed to make out a meritorious defense -- by either the Volunteer Protection Act or the defense of ineffective counsel.   Tr. at 12:8-13:24 (Fain).   Dogs Deserve also argued that the Volunteer Protection Act does not protect the Defendants, because they were not volunteers until after New Mexico Dogs had incorporated.   See Tr. at 12:8-18 (Fain).   Regarding Mr. Chavez, Dogs Deserve argues that the Defendants failed to inform him of all of the information in the case, and that he was not a trademark attorney and was only doing a favor for friends.   See Tr. at 12:19-13:19 (Fain).   Dogs Deserve states: "As such, both affirmative defenses have to fail. . . .  Because they don't have an affirmative defense, and therefore, a likelihood of succeeding on the merits of the case, and because the default was more culpable, because they did not have counsel who had agreed to enter into the case, and they did not do it on their own, the default should stand."   Tr. at 13:20-14:18 (Fain).

The Court then asked Dogs Deserve "can I really consider the proffer that you have made about what Mr. Chavez has said?"   Tr. at 15:12-15 (Court).   According to Dogs Deserve, even without the evidence of what Mr. Chavez may have said, the weight of the evidence still indicates that, with respect to the Defendants, "they had actual notice that a default could occur."   Tr. at 16:4-5 (Fain).   Further, Dogs Deserve contended that the Defendants were aware of the limited scope of Mr. Chavez' representation, because they were "fully aware of the fact that they weren't paying" him and that, thus, the Complaint would go unanswered without action on their part.   Tr. at 1710-19 (Fain).   The Court responded to that logic by positing that Mr. Chavez appears to have been making two different representations: "He's saying, first of all, to [Dogs Deserve] he's pro bono, and he's not going to be the litigator in the case.   And . . . then he's telling the client that he needs -- that they should pay him.   But he's also telling [them] that he will represent them in Court."   Tr. 18: 13-20 (Court).   Accordingly, the Court considered that record pertinent, and not

Dogs Deserve's proffer of what Mr. Chavez had recently said.   See Tr. at 19:20-23 (Court).   At this point, Dogs Deserve conceded that it was not relying on the prejudice prong with respect to showing good cause to set aside an entry of default, and instead was focusing on the willfulness and meritorious defense prong -- specifically arguing that the evidence indicates that the Defendants had knowledge of the need to file an answer and willfully caused the failure to answer, and that the Defendants are not protected under the Volunteer Protection Act or otherwise because of Mr. Chavez' conduct.   See Tr. at 23:2-10 (Court, Fain).

The Defendants then argued that there is a lesser standard for demonstrating good cause to set aside an entry of default under rule 55 than the standard for setting aside a judgment under rule 60.   See Tr. at 25:8-18 (LaPado).   Accordingly, the Defendants contend that, should the Court set aside the Clerk's Entry of Default in accordance with the good-cause standard, Dogs Deserve's Motion for Default Judgment would become moot.   See Tr. at 26:18-21 (LaPado).   The Defendants then argued that the good-cause analysis and "decision is within the discretion of the Court."   Tr. 26:23-27:2 (LaPado).   The Defendants then recapped the evidence before the Court, primarily arguing that the logical inference from the Defendants' interactions with Mr. Chavez was not that the Defendants willfully failed to answer the Complaint, but instead that Stell has provided an affidavit indicating that Mr. Chavez did not limit his representation, and Mr. Chavez' representations of the Defendants over the course of the negotiations gave the Defendants no cause to believe he would fail to answer the Complaint.   See Tr. at 27:8-28:25 (LaPado).   Then, despite Dogs Deserve's concession that continuing litigation will not prejudice it, the Defendants maintained that merely continuing litigation in this context cannot be a source of prejudice.   See Tr. at 29:1-9 (LaPado).

The Defendants then argued in support of the claim that they have a meritorious defense

with respect to the Complaint.  See Tr. at 29:10-30:25 (LaPado).  Essentially, the argument is

that "each of these defendants were volunteers of the corporation, the nonprofit corporation, acting

in the course and scope of their duties."  Tr. at 29:10-18.  The Defendants further maintained

that, regardless of Dogs Deserve's arguments that the Volunteer Protection Act does not apply,

"the defendants don't need to conclusively prove their defense.  We're not at that stage.  They

need to present enough to show that they have a meritorious defense, if there are factual issues that

were made about, or things that need to be addressed later on in discovery or in briefing."  Tr. at

29:21-30:2 (LaPado).  The Defendants then reiterated that default judgment is disfavored, and

provided that:

> I believe the defendants did not act willfully; that we can show that they did not act
> willfully in this matter to bring about the default.  I think there is also good cause
> because there is no prejudice to the plaintiffs by setting aside the default.   And also
> because they have presented a meritorious defense.

Tr. at 31:11-21 (LaPado).

The Court then directed the argument to why the Defendants were so keen to set aside the

Clerk's Entry of Default when, in fact, they generally conceded that the trademark infringement

had occurred.   See Tr. at 34:1-8 (Court).   The Defendants responded that it was their position that

the "individual defendants should not be liable for any part of the judgment, when and if it gets to

that."  Tr. at 34:11-15 (LaPado).   The Court then posited:

> What if I were to do this: If the corporation really doesn't have any defense, at least
> substantively leave the default judgment in place as to the corporation saying that
> they don't have a meritorious substantive defense; let the individuals out from
> underneath the default because of this particular New Mexico [sic] statute that
> protects volunteers . . . .

Tr. at 34:15-22 (Court).   The Defendants agreed with this solution, except to the extent that New

Mexico Dogs would still have an argument, perhaps at the damages stage, that Mr. Chavez had

erroneously told it to continue to unlawfully infringe on the trademark.   See Tr. at 35:12-21

(LaPado).   The Defendants then explained to the Court their argument why the Volunteer Protection Act would protect the individual Defendants, that being because "they were at all times volunteers."   Tr. at 37:16-17 (LaPado).

Dogs Deserve then responded to the Defendants' arguments, first by maintaining that the many of the Complaint's claims, like the trademark infringement, happened before the individual Defendants were volunteers, because New Mexico Dogs had not yet been incorporated when that unlawful conduct was alleged to have occurred.   See Tr. at 41:2-18 (Fain).   Dogs Deserve conceded, however, that, after the time of incorporation, the individual Defendants may have been volunteers, assuming they were acting in the scope of the volunteership.   See Tr. at 24-25 (Fain). Dogs Deserve does not, however, consider the Volunteer Protection Act to cover much of this unlawful conduct, because it falls outside the Volunteer Protection Act's scope.   See Tr. at 43: 15-25 (Fain).   At this point, Dogs Deserve conceded that there is a lesser standard for demonstrating good cause in this context.   See Tr. at 45:5-8 (Fain).

With respect to the factors -- culpability and willfulness, prejudice to the non-defaulting party, and a meritorious defense -- the Court then asked whether it merely needs to consider them or if they each need to be individually met.   See Tr. at 47:5-10 (Court).   The Defendants then explained that the Court can "consider any relevant factors."   See Tr. at 47:11-25 (LaPado).   The Court then provided that it would give these matters some thought, and would confirm that "I have a lot more discretion here" than in the context of setting aside a judgment.   Tr. at 48:16-23 (Court).

The Court also provided that, if all of the factors needed to be met, and not just considered, the willfulness factor presented an issue here regarding whether the Defendants' conduct can be considered in the absence of Mr. Chavez's conduct.   See Tr. at 49: 1-12 (Court).   The Court also

expressed concern about whether New Mexico Dogs would have a meritorious defense, should that factor need to be met, but that the individual Defendants were likely going to be able to meet the standard.   See Tr. at 49:13-23 (Court).   The Court then told the parties it was going to issue a scheduling order, because it was inclined to let the case move forward.   See Tr. at 49:24-50:2 (Court).

## LAW REGARDING SUR-REPLIES

Local rule 7.4(b) provides: "The filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b).   "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." Walker v. THI of N.M. at Hobbs Center, 2011 WL 2728344, at *1 (D.N.M. July 6, 2011)(Browning, J.).   See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D. 201, 204 (D.N.M. 2005)(Browning, J.).   The Court has granted leave to file sur-reply where a party has made arguments and presented new evidence that did not appear in the party's moving papers.   See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D. at 204.

## LAW REGARDING SERVICE OF PROCESS

Rule 4(m) of the Federal Rules of Civil Procedure requires a summons to be served within 120 days after the complaint is filed.

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specific time.   But, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).   The burden of establishing validity of service is on the plaintiff.   See F.D.I.C. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).   In 1993, Congress amended former rule 4(m) and "broaden[ed] the district court's discretion [to permit untimely service of process] by allowing it to extend the time for service even when the plaintiff has not shown good cause."   Espinoza v. United States, 52 F.3d 838, 840-41 (10th Cir. 1995).

"A district court abuses its discretion [in deciding whether to dismiss a case for untimely service of process] if its decision is arbitrary, capricious, or whimsical." Smyers v. County of Atchison, Kan., 336 Fed. Appx. 819, 820-21 (10th Cir. 2009).  Further, "[a] district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion."  ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

Thus, the Court now employs a two-step analysis for determining whether to grant an extension of time when a summons and complaint has not been timely served.  See Salazar v. City of Albuquerque, 278 F.R.D. 623, 626-27 (D.N.M. 2011)(Browning, J.).  First, the plaintiff is entitled to a mandatory extension of time if the plaintiff can demonstrate good cause for failing to timely effect service.  See Espinoza v. United States, 52 F.3d at 841.  "The good cause provision of Rule 4[ (m) ] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994)(internal quotation marks omitted).  "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service.  Mistake of counsel or ignorance of the rules also usually do not suffice."  In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996).  Avoiding or evading service of process, however, may constitute "good cause," requiring a mandatory extension of time in which to serve.  Hendry v. Schneider, 116 F.3d 446, 449 (10th Cir. 1997).

Second, if the plaintiff fails to show good cause, the court still must exercise its discretion, and either dismiss the case without prejudice or extend the time for service.  See Espinoza v. United States, 52 F.3d at 842.  In making its determination whether to grant a permissive extension, the court may consider several factors, including whether the applicable statute of limitations would bar the re-filed action and other policy considerations.  See Espinoza v. United

States, 52 F.3d at 841-42.

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.   Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b).   Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Fed. R. Civ. P. 4(m) Advisory Committee's note (1993 Amend.).   See Salazar v. City of Albuquerque, 278 F.R.D. at 626-27.

## LAW REGARDING WAIVER OF SERVICE OF PROCESS

A defendant may also waive service of process.   See Kiro v. Moore, 229 F.R.D. 228, 229-30 (D.N.M. 2005)(Browning, J.).   Under rule 4(i), "[i]f service is not waived, the person effecting service shall make proof thereof to the court."   Fed. R. Civ. P. 4(i).   Rule 12(b)(4) and 12(b)(5) allow a defendant to defend upon the grounds of insufficient service of process.   See rule 12(b)(4); 12(b)(5).   Under rule 12(h), however, the defense of "service of process must be raised in a party's first responsive pleading or by motion before the responsive pleading."   United States v. 51 Pieces of Real Property Roswell, N.M., 17 F.3d 1306, 1314 (10th Cir. 1994).   See Fed. R. Civ. P. 12(h)(1).   "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses."   Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir. 1992)(citing Fed. R. Civ. P. 12(h)(1)).

Rule 4(d)(1) further requires individuals, corporations, or associations that are subject to service under Rule 4(e), (f), or (h), to cooperate in saving unnecessary expenses of serving a summons and complaint.   See Fed. R. Civ. P. 4(d)(1).   A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good

cause for the failure.   See Fed. R. Civ. P. 4(d)(2).   If the waiver is signed and returned you cannot object to the absence of a summons or of service.   See Fed. R. Civ. P. 4(d)(2).   If you waive service you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.   See Fed. R. Civ. P. 4(d)(3).   By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.   See Fed. R. Civ. P. 4(d)(3).

## LAW REGARDING DEFAULT JUDGMENTS AND THE ENTRY OF DEFAULT UNDER RULE 55

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for a default judgment.   See United States v. Rivera, 2015 WL 4042197, at *9-12 (D.N.M. June 30, 2015)(Browning, J.).   First, a party must obtain a Clerk's entry of default.   See Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); Watkins v. Donnelly, 551 F. Appx. 953, 958 (10th Cir. 2014)(unpublished)[2]("Entry of default by the clerk is a necessary prerequisite that must be

---

[2]Watkins v. Donnelly is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court concludes that Watkins v. Donnelly, United States v. Craighead, 176 F. Appx. 922 (10th Cir. 2006)(unpublished), Pinson v. Equifax Credit Information Services, Inc., 316 F. Appx. 744 (10th Cir. 2009)(unpublished) and United States v. $285,350.00 in U.S. Currency, 547 F. Appx. 886, (10th Cir. 2013)(unpublished), all have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

performed before a district court is permitted to issue a default judgment.").    Second, the party

must either request the Clerk to enter default judgment when the claim is for "a sum certain or a

sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), or, "[i]n all other cases,

the party must apply to the court for a default judgment," Fed. R. Civ. P. 55(b)(2).

After entering default judgment, a district court takes all of the well-pleaded facts in a

complaint as true.   See United States v. Craighead, 176 F. Appx. 922, 925 (10th Cir. 2006)

(unpublished); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)("While a default judgment

constitutes an admission of liability, the quantum of damages remains to be established by proof

unless the amount is liquidated or susceptible of mathematical computation." (citations

omitted)).    "If defendant does not contest the amount prayed for in the complaint [by failing to

answer] and the claim is for a sum certain or a sum that can be made certain by computation, the

judgment generally will be entered for that amount without any further hearing."   United States

v. Craighead, 176 F. Appx. at 925 (alteration in original)(quoting 10A Charles Alan Wright,

Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice &

Procedure § 2688 (3d ed. 1998)).   See Fed. R. Civ. P. 8(d) ("Averments in a pleading to which

a responsive pleading is required, other than those as to the amount of damage, are admitted

when not denied in the responsive pleading.").   A court may enter a default judgment for a

damage award without a hearing if the amount claimed is "one capable of mathematical

calculation."   Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)

(Browning, J.)(quoting H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir.

1985)(citing Venable v. Haislip, 721 F.2d at 300).   "It is a familiar practice and an exercise of

judicial power for a court upon default, by taking evidence when necessary or by computation

from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to

give judgment accordingly."   10A Wright & Miller, supra, § 2688 (quoting Pope v. United States, 323 U.S. 1, 12 (1944)).   "If the damages sum is not certain or capable of easy computation, the court may" conduct such hearings or order such references as it deems necessary.   Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202 (citing Beck v. Atl. Contracting Co., 157 F.R.D. 61, 64 (D. Kan. 1994)).[3]   See Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

"Default judgments are a harsh sanction."   Ruplinger v. Rains (In re Rains), 946 F.2d 731, 732 (10th Cir. 1991).   The Court has noted that, "[b]ecause default judgment is a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction 'purely as a penalty for delays in filing or other procedural error.'" Noland v. City of Albuquerque, CIV 08-0056 JB/LFG, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009)(Browning, J.)(quoting Ruplinger v. Rains (In re Rains), 946 F.2d at 733).

> [S]trong policies favor resolution of disputes on their merits: [T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.   In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.   The default judgment remedy serves as such a protection.

---

[3]In that case, the Court provided:

'Entry of default precludes a trial on the merits.' Olcott v. Delaware Flood Co., 327 F.3d 1115, 1119 n.3 (10th Cir. 2003).   Rule 55(b)(2) does not contain an inherent jury requirement; rather, it preserves the right to a jury only when statute requires. See Olcott v. Delaware Flood Co., 327 F.3d at 1124.   At least where the parties have not requested a jury prior to entry of default, the '[d]efendants do not have a constitutional right to a jury trial following entry of default.' . . . Mitchell v. Bd. of County Comm'rs of the County of Santa Fe, No. 05CV1155, 2007 WL 2219420, at *18-23 (D.N.M. May 9, 2007)(Browning, J.).

Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202.

Ruplinger v. Rains (In re Rains), 946 F.2d at 732-33 (citations omitted)(internal quotation marks omitted).  See Noland v. City of Albuquerque, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for the defendant City of Albuquerque "entered an appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces interminable delay because of the City of Albuquerque's actions").

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).   "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." Pinson v. Equifax Credit Info. Servs., Inc., 316 F. Appx. 744, 750 (10th Cir. 2009)(unpublished) (quoting Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 775 n.6 (10th Cir. 1997)).  See Hunt v. Ford Motor Co., 1995 WL 523646, at *3.  The distinction between setting aside an entry of default and setting aside a default judgment "reflects the different consequences of the two events and the different procedures that bring them about."   10A Wright & Miller, supra, § 2692.

> [T]he clerk or the court may enter a default upon the application of the nondefaulting party.   The entry simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence.   The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).
>
>        In sharp contrast, a final default judgment is not possible against a party in default until the measure of recovery has been ascertained, which typically requires a hearing, in which the defaulting party may participate; in some situations, a jury trial may be made available to determine an issue of damages.   Moreover, the entry of a default judgment is a final disposition of the case and an appealable order.

. . . .

Additional differences between relief from the entry of a default and from a default judgment appear in the grounds that will support the motion being granted. Stated generally, the defaulting party is not entitled to relief from a judgment as a matter of right under Rule 60(b). The movant must present a justification supporting the relief motion and must establish his contentions if challenged. Although whether relief will be granted is a matter within the sound discretion of the trial court, the vacation of a default judgment is subject to the explicit provisions of Rule 60(b), which places additional restraints upon the court's discretion. The motion to set aside a default entry, on the other hand, may be granted for "good cause shown," which gives a court greater freedom in granting relief than is available in the case of default judgments.

10A Wright & Miller, supra, § 2692 (footnotes omitted).

While there are some differences between setting aside the entry of default and setting aside a default judgment, there are some important similarities, including that courts may consider the same factors: whether the party willfully defaulted, whether setting aside the entry of default or default judgment would prejudice the non-movant, and whether the movant has presented a meritorious defense. See Pinson v. Equifax Credit Info Servs., Inc., 316 F. Appx. at 750 ("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" (quoting Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d at 183)); United States v. $285,350.00 in U.S. Currency, 547 F. Appx. 886, 887 (10th Cir. 2013)(unpublished)("Three requirements must be met when setting aside a default judgment under Rule 60(b): '(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment.'" (quoting United States v. Timbers Pres., 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds by Degen v. United States, 517 U.S. 820, 825 (1996))).

The United States Court of Appeals for the Tenth Circuit has, at times, listed two factors rather than three for the standard in setting aside a default judgment:

> Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment only if the movant can demonstrate justifiable grounds, including mistake, inadvertence, surprise or excusable neglect.   In the case of default judgments, courts have established the further requirement that a movant demonstrate the existence of a meritorious defense.   E.g., Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970).   A 60(b) motion thus comprehends two distinct aspects[:] justification for relief and a meritorious defense.

In re Stone, 588 F.2d at 1319.   See Sawyer v. USAA Ins. Co., 839 F. Supp. 2d 1189, 1230 (D.N.M. 2012)(Browning, J.)(setting aside a default judgment, because, "when a plaintiff fails to properly serve a defendant, a default judgment is void and should be set aside under rule 60(b)(4)").   "Although how these factors will be evaluated and weighed lies within the discretion of the trial court to a considerable degree, . . . federal courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment."   10A Wright & Miller, supra, § 2692 (footnotes omitted).   "The standard for setting aside an entry of default under Rule 55(c) is fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment.'"   Crutcher v. Coleman, 205 F.R.D. 581, 584 (D. Kan. 2001)(Vratil, J.)(quoting Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)).   See Applied Capital, Inc. v. Gibson, 2007 WL 5685131, at *20-23 (liberally construing a pro se defendant's motion to dismiss as a motion to set aside the default, but concluding that the pro se defendant did not show good cause for the Court to set aside the entry of default, because, although setting aside the entry of default would not prejudice the plaintiff, the pro se defendant was "fully aware of the need to answer within the given time limitation and chose not to respond timely," and he failed to appear at a hearing to support his allegation that he had a meritorious defense).

## LAW REGARDING RULE 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).   "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."   Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).   Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment."   Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)).   The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice.   Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.   Once a case is "unconditionally dismiss[ed],"[4] the Court loses all jurisdiction

---

[4]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," Smith v. Phillips, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)).   Such conditions "could include retention of some jurisdiction by the court."   Smith v. Phillips, 881 F.2d at 905 (citing McCall-Bey v. Franzen, 777 F.2d 1178, 1188-90 (7th Cir. 1985)).   The Tenth Circuit has stated that, if the dismissal is pursuant to rule 41(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition [the] dismissal . . . upon a retention of jurisdiction."   881 F.2d at 905.   This is likely no longer true post-Kokkonen; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)[(A)](ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

Kokkonen, 511 U.S. at 381-82.   See Macias v. N.M. Dep't of Labor, 300 F.R.D. 529, 551-63 (D.N.M. 2014)(Browning, J.)(ruling that the Court lacks jurisdiction to enforce a settlement agreement unless the dismissal order explicitly retains jurisdiction or incorporates the settlement

over the case other than the ability to hear motions under rule 60(b).   Smith v. Phillips, 881 F.2d

902, 904 (10th Cir. 1989)("We agree with the Seventh Circuit that '[a]n unconditional dismissal

terminates federal jurisdiction except for the limited purpose of reopening and setting aside the

judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b)."   (alterations in

original)).

Motions to obtain relief from a judgment or order based on "mistake, inadvertence,

surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a

year after the entry of the judgment or order or the date of the proceeding."   Fed. R. Civ. P.

60(c)(1).   See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from

judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought

within one year of the judgment.").   This deadline may not be extended and is not subject to the

court's discretion.   See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under

Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." (emphases added)).   The pendency of

---

agreement's terms into the order).

Two factors that militate against the view that a federal court may retain jurisdiction of a
case dismissed pursuant to rule 41(a)(1)(A) are: (i) the proclamation in Kokkonen was dicta, and
"[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend,"
511 U.S. 375, 379; and (ii) the Court refers to "embody[ing] the settlement contract in its dismissal
order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated
"without a court order,"   Fed. R. Civ. P. 41(a)(1)(A) (emphasis omitted).

The Court must, however, interpret Smith v. Phillips in light of the Supreme Court's
subsequent decision in Kokkonen, in which the Supreme Court held that a district court's ancillary
jurisdiction does not extend to the post-dismissal enforcement of federal case settlement
agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear
the claims; (ii) the court incorporated the terms of the settlement agreement into its order of
dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal.
Kokkonen, 511 U.S. at 381.   That decision continues to permit district courts to condition
dismissals under rule 41(a)(2), see 511 U.S. at 381, and appears to have no bearing on courts'
power to reopen cases pursuant to rule 60(b), see 511 U.S. at 378 (noting, without opining on, the
practice of "[s]ome Courts of Appeals" to "reopen[ ] . . . dismissed suit[s] by reason of breach of
the agreement that was the basis for dismissal").

an appeal does not toll the time requirement for pursuing a motion under rule 60(b).   See Fed.

R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. Appx. 121, 123 (10th Cir. 2007)(unpublished); Tool

Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll

or extend the one-year time limit of Rule 60(b).").   No time limit applies to rule 60(b)(6) other

than that the motion be made within a reasonable time.   See Fed. R. Civ. P. 60(c)(1).

     **1.**       **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside

in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the

default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving

party will be prejudiced by setting aside the judgment.   See United States v. Timers Preserve,

999 F.2d 452, 454 (10th Cir. 1993).

Under some circumstances, a party can rely on rule 60(b)(1) to rectify its attorney's

mistake or when its attorney acted without its authority.   See Yapp v. Excel Corp., 186 F.3d

1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to

provide relief to a party . . . when the party has made an excusable litigation mistake or an

attorney has acted without authority . . . .").   Mistake in this context entails either acting without

the client's consent or making a litigation mistake, such as failing to file or comply with

deadlines.   See Yapp v. Excel Corp., 186 F.3d at 1231.   If the alleged incident entails a

mistake, then it must be excusable, meaning that the party was not at fault.   See Pioneer Inv.

Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's

requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d

572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined

to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled

decision by the party."). <u>Cf.</u> <u>Pelican Prod. Corp. v. Marino</u>, 893 F.2d 1143, 1146 (10th Cir.

1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result

of an attorney's deliberate litigation tactics. <u>See</u> <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d at

577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent
> and is considered to have notice of all facts, notice of which can be charged upon
> the attorney.

<u>Pioneer Inv. Servs. v. Brunswick Assocs. LP</u>, 507 U.S. at 397 (quoting <u>Link v. Wabash R.R. Co.</u>,

370 U.S. 626, 633-34 (1962))(internal quotation marks omitted). The Tenth Circuit has held

that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's

conduct" and has noted that those "who act through agents are customarily bound," even though,

when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences." <u>Gripe v. City of Enid, Okla.</u>, 312 F.3d 1184, 1189 (10th Cir. 2002). The

Court has previously stated:

> There is a tension between how the law treats attorney actions that are without
> authority, thus permitting relief under rule 60(b), and how the law treats those
> attorney actions which are inexcusable litigations decisions, thus failing to qualify
> for relief; although the distinction between those actions may not always be
> logical, it is well established.

<u>Wilson v. Jara</u>, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10,

2012)(Browning, J.).[5]

---

[5]The Supreme Court has recognized that individuals must be "held accountable for the acts
and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of
respondents *and their counsel* was excusable." <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. LP</u>,
507 U.S. 380, 397 (1993)(emphasis in original). At the same time, the Tenth Circuit has held that,
when counsel acts without authority, rule 60(b)(1) provides relief from judgment. <u>See</u> <u>Cashner v.</u>

---

Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . ."). "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, 2012 WL 1684595, at *7 n.7.

The Court is inclined to conclude that, when the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 749 P.2d 90, 92 (1988); Bolles v. Smith, 591 P.2d 278, 280 (1979)). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, 2012 WL 1684595, at *7 n.7. In Chavez v. Primus Auto. Fin. Servs., the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see, e.g., FDIC v. Oaklawn Apts., 959 F.2d at 175-76 (finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see, e.g., Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong. Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. Appx. 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstance in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."   Fed. R. Civ. P. 60(b)(6).   No time limit applies to rule 60(b)(6) save that the motion be made within a reasonable time.   See Fed. R. Civ. P. 60(c)(1).   "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)."   Wright & Miller, supra, § 2864, at 490.   In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)' s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."   507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).   "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."   Moore et al., supra, § 60.48[2], at 60-182.   Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863

---

tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case.   The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify."   Model Rules of Prof'l Conduct R. 1.2(a).   While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to a jury trial.   One unpublished decision from the United States Court of Appeals for the Fourth Circuit discussed briefly a scenario where, without resolving the merits of the issue, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense."   United States v. McMahan, 8 F. Appx. 272, 274 (4th Cir. 2001)(unpublished).

n.11 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863. Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"   Wright & Miller, supra, § 2864, at 483.   The Supreme Court has expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.   If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.   In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control.   Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 393 (1993)(citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. at 197-200; Klapprott v. United States, 335 U.S. 601, 613-614 (1949)).   See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance.   See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition.   In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)."   Klapprott v. United States, 335 U.S. at 613. See Wright & Miller, supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness,"

which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party. Wright & Miller, supra, § 2864, at 485, 487. The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal."[6] Wright & Miller, supra, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed. See Pyeatt v. Does, 19 F. Appx. 785, 788 (10th Cir. 2001)(unpublished)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.").

## LAW REGARDING THE VOLUNTEER PROTECTION ACT

In 1997, Congress enacted the Volunteer Protection Act to "provide certain protections from liability abuses related to volunteers serving nonprofit organizations and governmental entities." 42 U.S.C. § 14501(b). Under the Volunteer Protection Act, volunteers[7] working for

---

[6]Professors Charles Wright and Arthur Miller note that

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment. In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

Wright & Miller, supra, § 2864, at 489-90 (citations omitted). See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

[7]The term "volunteer" means

An individual performing services for a nonprofit organization or a governmental entity who does not receive -- (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer.

nonprofit organizations[8] are immunized from liability for the harm they cause when acting within the scope of their responsibilities, unless such harm is caused by "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."   42 U.S.C. § 14503(a)(3).   The Volunteer Protection Act does not immunize volunteers for misconduct that: (i) "constitutes a crime of violence (as that term is defined in section 16 of Title 18) or an act of international terrorism (as that term is defined in section 2331 of Title 18) for which the defendant has been convicted in any court"; (ii) "constitutes a hate crime (as that term is used in the Hate Crime Statistics Act (28 U.S.C. 534 note))"; (iii) "involves a sexual offense, as defined by applicable State law, for which the defendant has been convicted in any court"; (iv) "involves misconduct for which the defendant has been found to have violated a Federal or State civil rights law"; or (v) "where the defendant was under the influence (as determined pursuant to applicable State law) of intoxicating alcohol or any drug at the time of the misconduct."   42 U.S.C. § 14503(f)(1).

> The Volunteer Protection Act
>
> preempts the laws of any State to the extent that such laws are inconsistent with the Act, except that the Act shall not preempt any State law that provides additional protection from liability relating to volunteers or to any category of volunteers in the performance of services for a nonprofit organization or governmental entity.

42 U.S.C. § 14502(a).

---

42 U.S.C. § 14505(6).

   [8]Under the Volunteer Protection Act, the term "nonprofit organization" includes "any organization which is described in section 501(c)(3) of such title and exempt from tax under section 501(a) of Title 26."   42 U.S.C. § 14505(4)(A).

## ANALYSIS

The standard for setting aside an entry of default under rule 55(c) is liberal, allowing the Court to consider, among other things, whether the default was willful and culpable, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Pursuant to its analysis under rule 55(c) -- keeping in mind the Court's strong preference for resolving disputes on the merits, and not by default judgment -- the Court concludes that: (i) setting aside the Clerk's Entry of Default in favor of continuing the litigation will not prejudice Dogs Deserve; (ii) the Defendants' conduct resulting in the Clerk's Entry of Default was not willful and culpable, but instead the consequence of confusion amongst all parties; and (iii) the individual Defendants likely have a meritorious defense to the claims alleged in the Complaint, by virtue of the Volunteer Protection Act.   Under the liberal standard, the Court concludes that good cause exists, and thus (i) denies Dogs Deserve's Motion for Default, and (ii) grants the Defendants' Motion to Set Aside.   In addition, the Court will grant Dogs Deserve's Motion for Leave to File Sur-Reply and notes that, because Dogs Deserve attached the arguments that it is seeking leave to make to the Motion for Leave, the Court has fully considered those arguments in granting the Motion to Set Aside.   See Tr. at 4:14-5:8 (Court).

**I.      IN THE INTEREST OF RESOLVING THIS DISPUTE ON THE MERITS, THE COURT CONCLUDES THAT, IN ITS ANALYSIS OF THE MANY FACTORS APPLICABLE TO THIS CASE, GOOD CAUSE EXISTS TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT.**

In deciding whether to set aside an entry of default, courts may consider, among other things, "'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." Pinson v. Equifax Credit Info. Servs., 316 Fed. Appx. at 749.   Unlike the steep showing needed to set aside a judgment under rule 60, the Court has more discretion in its consideration of a motion to set aside a clerk's entry of default.   See

Pinson v. Equifax Credit Info. Servs., 316 Fed. Appx. at 749.   In exercising its discretion in this rule 55 context, the Court is mindful of the maxim that, "[b]ecause default judgment is a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction purely as a penalty for delays in filing or other procedural error."   Noland v. City of Albuquerque, 2009 WL 2424591, at *1 (internal quotation marks omitted).

As the factual and procedural sections of this opinion evidence, there was a disconnect of thought amongst Dogs Deserve, Mr. Chavez, and his clients.   See Tr. at 15:12-15 (Court).   The Defendants have stated, by affidavit, that they believed that they had retained Mr. Chavez for all purposes -- negotiations and litigation alike.   See Stell Decl. ¶¶ 10-11, 14, at 2-3.   Mr. Chavez' conduct also suggests an unlimited scope of representation, particularly where he entered the waivers of service on behalf of his clients with respect to the Complaint.   See Waiver of the Service of Summons as to New Mexico Dogs Deserve Better; Waiver of the Service of Summons as to Angela Stell; Waiver of the Service of Summons as to Martina Holguin; Waiver of the Service of Summons as to Kaye Peery.   Thus, while Dogs Deserve argues that there was a willful and culpable failure by the Defendants to answer the Complaint, the Court concludes that the more logical inference is that the Defendants failed to answer because they were under the impression that their attorney was fully and competently negotiating and litigating on their behalf.   This inference finds further support in the fact that, upon learning of the Clerk's Entry of Default, the Defendants retained their current counsel; willful and culpable failure to answer is generally incompatible with such an action.   See Stell Decl. ¶ 15, at 3.   Neither Mr. Chavez nor the Defendants were just blowing off the litigation, or otherwise signaling that they did not take it seriously and were going to default themselves.   It seems largely that it was a miscommunication

between Mr. Chavez and the Defendants which resulted in the failure to answer.   In light of the liberal standard for finding good cause, the Court is convinced that good cause exists by analysis of this factor alone, but finds further support for its conclusion by consideration of the other factors, as well.

Of course, there are cases in the rule 60(b) context which suggest that a litigant is generally stuck with the decisions -- bad or good -- made by their attorneys.   See Pelican Prod. Corp. v. Marino, 893 F.2d at 1146.   The Court emphasizes that in this case, where it is instead analyzing the facts under rule 55, the Court has broader discretion to distance the Defendants' conduct from that of their attorney, particularly here where the effect of miscommunication amongst the parties is evident.   See Pinson v. Equifax Credit Info. Servs., 316 Fed. Appx. at 749.

Dogs Deserve conceded at the hearing that it did not face prejudice by continuing the litigation.   Furthermore, the Court independently concludes that there is no prejudice in this context.   See Tr. at 23:2-10 (Court, Fain).   A mere delay in litigation does not constitute the prejudice needed to support the application of the harsh sanction of default judgment.   See Ruplinger v. Rains (In re Rains), 946 F.2d at 732.

The Defendants have also proffered a defense to the claims brought against them in the Complaint.   In particular, the Defendants point to the Volunteer Protection Act, under which volunteers working for nonprofit organizations are immunized from liability for the harm they cause when acting within the scope of their responsibilities, unless such harm is caused by "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."   42 U.S.C. § 14503(a)(3).   The Court is hard pressed to conclude, at this point in the pleadings, that the Defendants' alleged conduct rises to such a level excepting it from the Volunteer Protection Act's

protections.   The Court thus concludes that the Defendants have proffered a meritorious defense with respect to the Court's liberal analysis of whether good cause exists to set aside the Clerk's Entry of Default.

The Court may exercise its discretion in its application of these factors.   The Court is inclined to conclude that New Mexico Dogs, the corporate defendant, would likely not enjoy the same protections as the individual Defendants under the Volunteer Protection Act.   In addition, the Court is inclined to conclude that Stell, Holguin, and Peery would likely not be entitled to the Volunteer Protections Act's protections for their conduct occurring prior to the incorporation of New Mexico Dogs.   Regardless, in its consideration of the unique facts giving rise to this dispute, the Court will exercise its discretion to set aside the Clerk's Entry of Default for good cause as to all of the Defendants.   See Tr. at 49:13-23 (Court).   It is unclear at this stage who committed the wrongs that Dogs Deserve alleges.   There is thus no reason to allow the case to proceed against the individual Defendants, but enter judgment against New Mexico Dogs.   The Court should thus allow the case to proceed, then, to see whether any wrongs were in fact done and, if so, who committed them.

In sum, the application of the three factors -- whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented -- is not talismanic.   In this case, then, the Court concludes that, by reference to the factors, good cause exists to set aside the Clerk's Entry of Default, because the circumstances do not demand the imposition of the harsh sanction of default judgment.   The Court's balance of the relevant considerations suggests that the Clerk's Entry of Default ought to be set aside so that the parties may reach a resolution on the merits of their dispute.

## II.  THE COURT CONCLUDES THAT LEAVE TO FILE SUR-REPLY IS WARRANTED IN THIS CASE.

The Defendants raised new factual allegations and, at the least, repackaged one of their legal arguments in the Defendants' Reply Supporting Motion to Set Aside.  "Specifically, Defendant introduces in its reply a new defense of reliance on advice of counsel, and introduces an entire affidavit of new factual allegations."  Motion for Leave at 1.  The Court concludes that, while most of the Reply Supporting Motion to Set Aside's content was not entirely novel -- because Mr. Chavez' role in this dispute was apparent from the beginning -- leave for sur-reply is warranted under local rule 7.4(b).  See D.N.M. LR-Civ. 7.4(b); Walker v. THI of N.M. at Hobbs Center, 2011 WL 2728344, at *1.  Accordingly, the Court grants Dogs Deserve's Motion for Leave and notes that it considered the arguments that Dogs Deserve makes in the attached sur-reply in the Court's resolution of the issues in this opinion.

**IT IS ORDERED** that: (i) the Plaintiff's Motion for Default Judgment and Permanent Injunction, filed February 20, 2014 (Doc. 17), is denied; (ii) the Defendants' Motion to Set Aside Clerk's Entry of Default, filed February 25, 2014 (Doc. 18), is granted; and (iii) the Plaintiff's Motion for Leave to File Sur-Reply to Individual Defendants' Motion to Set Aside Clerk's Entry of Default, filed April 8, 2014 (Doc. 25), is granted.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Dennis Armijo
Dennis Armijo, P.C.
Albuquerque, New Mexico

--and--

Katy C. Fain
Trilla, Illinois

     *Attorneys for the Plaintiff*

Rudolph B. Chavez
Rudolph B. Chavez Attorney at Law
Albuquerque, New Mexico

--and--

Alicia M. LaPado
Donald Kochersberger
Business Law Southwest, LLC.
Albuquerque, New Mexico

     *Attorneys for the Defendants*